101 So.2d 381 (1958)
STATE ex rel. WEDGWORTH FARMS, Inc., a corporation organized and existing under the laws of the State of Florida, Relator,
v.
Ina S. THOMPSON, as State Motor Vehicle Commissioner of Florida, Respondent.
Supreme Court of Florida.
March 7, 1958.
Rehearing Denied April 9, 1958.
*383 Jones, Adams, Paine & Foster, R. Bruce Jones, West Palm Beach, Keen, O'Kelley & Spitz, J. Velma Keen and Chas. H. Spitz, Tallahassee, for relator.
J. Lewis Hall of Hall, Hartwell & Douglass and Charles Knott, Tallahassee, Richard W. Ervin, Atty. Gen., and John Blair, Asst. Atty. Gen., for respondent.
THORNAL, Justice.
In this original proceeding in mandamus the relator Wedgworth Farms, Inc. seeks a peremptory writ notwithstanding the return of the respondent Thompson, as Motor Vehicle Commissioner, which would thereby direct the respondent to issue to the relator a so-called "P" Series motor vehicle license tag.
Our ultimate judgment turns on our interpretation of Section 320.08, Florida Statutes, F.S.A., governing the issuance of "P" Series tags.
We have taken jurisdiction of the proceeding in accord with that provision of Section 4, Article V, Florida Constitution, as amended in 1956, F.S.A., which reads in part that this court "may issue writs of mandamus * * * when a state officer, board, commission, or other agency authorized to represent the public generally * * * is named as respondent, * * *." The respondent here is the State Motor Vehicle Commissioner. The relator asserts a right allegedly given by statute and claims that the respondent has denied this right. We think the instant case typifies the sort of proceeding that falls within our jurisdiction as delineated by the quoted language of the Constitution.
By its petition for the alternative writ the relator alleges itself to be engaged in the business of farming. In the conduct of this business relator owns certain trucks which are used in its farming and harvesting operations. Allegedly these trucks are used a majority of the operational time and mileage in farming and harvesting operations on the farms of the relator. It is also admitted that the trucks from time to time use the highways of the state in operations incidental to farming and harvesting and in such incidental operations use the highways both with and without loads.
The petition avers that the relator has applied to the respondent for the registration of such trucks for so-called motor vehicle "P" Series tags. The respondent has declined to issue the tags on the basis of certain statutory provisions and regulations which we discuss more in detail later. Alleging that the regulations conflict with the statute and asserting that the statute entitled the relator to the registration of its trucks as requested, this proceeding in mandamus was originated in this court to obtain mandatory relief.
The respondent has filed her response in which she asserts that the regulations promulgated by her are consistent with the applicable statutes and that regardless of the regulations the statutes involved do not accord to the relator the rights which it undertakes to enforce.
The matter is now before us on a motion for a peremptory writ notwithstanding the return.
It is the contention of the relator that farmers have been classified by the Legislature for special treatment in the matter of motor vehicle licenses; that the type of operation described by the relator in its application for registration brings it within certain quoted provisions of Section 320.08, Florida Statutes, F.S.A., and that the cited statute authorizes the relator to operate loaded motor vehicles over the public highways as an incident to farming and harvesting the so-called "P" Series registration.
*384 It is the contention of the respondent that neither Section 320.08, Florida Statutes, F.S.A., nor any other statutory provision authorizes or directs the respondent to issue a "P" Series license tag to anyone who contemplates operating loaded motor vehicles over the public highways regardless of the use of the vehicle as an incident to farming and harvesting.
By its well prepared brief the relator undertakes to delineate the history of various privileges which the Legislature has extended by statute to various types of farm vehicles. Only a portion of these statutes is applicable to the problem at hand. We are referred to the others by relator as evidence of the proposition that for a number of years now the Legislature has undertaken to classify farmers generally for special treatment with reference to motor vehicle licenses. We have no difficulty in agreeing that farmers and others engaging directly in agricultural pursuits may be catalogued and classified for particular benefits by legislative enactment. Consistently now for a number of years the Congress of the United States as well as our own State Legislature have undertaken to recognize the problems of the farmer in the light of the vital contribution which they make to supplying the food of the nation. We are therefore not concerned with any broad principle that would preclude us from considering exceptions made for the benefit of farmers as a class. Similarly it is unnecessary to delve into the complexities of requirements for due process and equal protection of the law for the obvious reason that we recognize the benefited class as one which justifies the exceptions announced for those falling within the class.
We therefore harken back merely to the particular statutes involved in the instant problem without an analysis of those incidental legislative acts which have no direct bearing on the problem. We think it important to examine first a part of Section 320.082, Florida Statutes, as amended in 1953, F.S.A., quoting therefrom the following:
"(1) The following license fee shall be paid to and collected by the state motor vehicle commissioner upon the registration or reregistration of the following vehicles:

 "Antique automobiles ........................ $5.00
 Vehicle used for the transportation
 of citrus fruit in groves,
 known and designated in the
 citrus industry as `goats' .................. $5.00

* * * * * *
"(3) A `goat' is hereby defined as being a motor vehicle designed, constructed and used principally for the transportation of citrus fruit within citrus groves."
We next quote from the applicable part of Section 320.08, Florida Statutes, F.S.A., as follows:
"The following license fees shall be paid to and collected by the state motor vehicle commissioner upon the registration or reregistration of the following vehicles:
* * * * * *
"`P' Series: Trucks, used in citrus groves, known as `goats' and other vehicles when used in the field by farmers or in the woods for the purpose of harvesting a crop, including naval stores, during such harvesting operations, and which shall not be operated principally upon the highways of the state: $5.00 flat."
The respondent has promulgated a regulation requiring among other things that the application for a Series "P" license tag shall show that the motor vehicle "will not be used to carry loads over or upon public roads". It is this provision of the regulation which relator contends is in conflict with the applicable statutes above quoted. We think it unnecessary to burden this opinion with an extended discussion of the regulation itself. This is so for the reason that it appears to us that the rights of the relator may be determined by the language *385 of the applicable statutes without reference to the regulation.
An examination of the history of the two sections of our statutes last quoted will reveal that originally the special privilege of obtaining what has now become known as the "P" Series license tag was limited to the so-called "goat," a conveyance peculiar to the citrus industry. We learn from the legislative definition of a "goat" as well as from our own knowledge of the use of these vehicles within the citrus industry that they were not employed for the purpose of carrying loads over the highways. A "goat" was and is simply a vehicle (or trailer attached to a tractor) having a long narrow flat surfaced body that was adapted for use within citrus groves between the rows of trees for the purpose of transporting field boxes of citrus fruits from within the grove to the grove gate or entrance where the fruit was then transferred to a truck and conveyed to the packing house or processing plant. Because of the very nature of this vehicle we repeat for emphasis that it was neither adapted for nor used as a means of transporting loads over the public highways.
We now refer back to the quoted provisions of Section 320.08 Florida Statutes, as amended in 1953, F.S.A., and as now in effect. It will be noted that by this amendment the Legislature provided a "P" Series tag for trucks used in citrus groves, known as "goats" and any other vehicles when used in the field by farmers or in the woods for the purpose of harvesting a crop, and which shall not be operated principally upon the highways of the state. The relator contends that the amendment from which we have last quoted now authorizes a farmer to obtain a "P" Series tag for five dollars and operate his trucks loaded or unloaded over the highways of the state so long as the majority of the use of the trucks is on the farm itself.
It appears to us that by the amendment of 1953 extending to farmers and naval stores operators the privileges of a "P" Series license tag the Legislature merely intended to grant to farmers generally the same privileges that theretofore had been granted to citrus growers in the operation of "goats." It will be recalled that "goats" were used to transport loads only within the groves, not on the highways. We arrive at this conclusion by applying the familiar doctrine of ejusdem generis as an aid to statutory construction. Under this doctrine when an enumeration of specific things is followed by some more general word or phrase, then the general word or phrase will usually be construed to refer to things of the same kind or species as those specifically enumerated. Hanna v. Sunrise Recreation, Inc., Fla. 1957, 94 So.2d 597.
The rule is merely an application of a phase of the broader maxim noscitur a sociis which simply means that general and specific words capable of analogous meaning when associated together take color from each other so that the general words are restricted to a sense analogous to the less general. Townsend v. State, 63 Fla. 46, 57 So. 611.
We are therefore led to the conclusion that by the 1953 amendment for the benefit of farmers generally the Legislature did not intend to authorize the hauling of loads in trucks over the public highways. The farmer could get the benefit of a "P" Series license tag for use on a truck which was employed to transport his harvested crops within the farm and such benefit extended to using the truck to reach the farm or to return to his headquarters over the public highways but without being loaded.
Relator takes the position that such a view would be meaningless for the reason that according to Section 320.01(19), Florida Statutes, F.S.A., a "farm tractor" and a "farm trailer" are defined as follows:
"(19) A `farm tractor' is hereby defined to be a motor vehicle operated principally upon a farm, grove, or orchard in agricultural or horticultural *386 pursuits and which uses the highways of this state incidentally in going from their headquarters to such farms, groves or orchards and returning therefrom, or in going from one farm, grove or orchard to another, except that said term shall not include a truck chassis upon which any spraying machine is hauled by anyone engaged in whole or in part in spraying for others for compensation. A `farm trailer' is defined as a vehicle without motive power which is drawn by a farm tractor and used principally for the purpose of transporting plows, harrows, fertilizer distributors, spray machines and other farm or grove implements, and which uses the highways of this state only incidentally in connection with farm tractors as above described."
We are then told that under Section 320.51, Florida Statutes, F.S.A., farm tractors and farm trailers are completely exempted from motor vehicle registration. In this regard we are of the view that the relator again has by its interpretation extended and broadened the meaning of "farm tractor" beyond that contemplated by the Legislature. Section 320.01(11), Florida Statutes, F.S.A., defines a "tractor" as including "any motor vehicle having four or more wheels designated or used for drawing other vehicles, but having no provision for carrying loads independently." Relator contends that since a "farm tractor" is defined in terms of "any motor vehicle" that such definition precludes any consideration of the limited definition of a "tractor" which we have quoted in full.
We have the view that a "farm tractor" is merely a tractor used in connection with farm and grove pursuits. It is not a load-carrying truck to be used indiscriminately over the highways of the state merely because it may be used on a farm fifty-one percent of its operational or mileage time. Contrary to the contention of the relator it appears to us that the Legislature granted to farmers an exemption from having to have a license tag for a tractor used principally on a farm as distinguished from other users of tractors for non-agricultural purposes.
When sections of the statutes above quoted are given the construction which we have applied, we think they can be reconciled and thereby made operative as a part of the legislative scheme to benefit farmers without charging the Legislature with an attempt to create a hodgepodge of inconsistencies that would be next to impossible to enforce.
Our conclusion is further buttressed by a recognition of the proposition that the relator is seeking the benefit of exemptions and special privileges that would take it out of the broader orbit of a taxing statute. While a taxing statute is always construed liberally in favor of the taxpayer and against the tax collector, we must remember that exemptions and special benefits to particular taxpayers that remove them from the more burdensome requirements applicable to others are construed strictly against the exemption. Harper v. England, 1936, 124 Fla. 296, 168 So. 403.
In view of what we have heretofore said we do not find that the statutes on which the relator relies give to the relator the rights which it seeks to assert. The relator, having, therefore, failed to establish a clear legal right to the performance of a clear legal duty by the respondent, the rule nisi is dismissed and the motion for a peremptory writ notwithstanding the return is denied.
TERRELL, C.J., and HOBSON, ROBERTS and DREW, JJ., concur.