544 So.2d 249 (1989)
Alton B. PARKER, Formerly William R. Daniel, Jr. (Deceased), As Property Appraiser of Hillsborough County, Florida; and Randy Miller, As Executive Director of the Department of Revenue, State of Florida, Appellants,
v.
The HERTZ CORPORATION, Appellee.
No. 88-00861.
District Court of Appeal of Florida, Second District.
May 12, 1989.
Rehearing Denied June 8, 1989.
*250 Ted R. Manry, III, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant Alton B. Parker.
Robert A. Butterworth, Atty. Gen., and Joseph Mellichamp, Asst. Atty. Gen., Tallahassee, for appellant Randy Miller.
Robert E. Johnson of Johnson & Johnson, Tampa, for appellee.
FRANK, Acting Chief Judge.
In 1970, the Hertz Corporation and the Hillsborough County Aviation Authority entered into two lease agreements encompassing land areas at the Tampa International Airport from which Hertz operates its automobile rental business. The lease agreement central to the question involved in this proceeding is identified as the "Ground Lease." Consistent with the terms of that lease, Hertz erected improvements upon the land. In the years 1981 through 1984, the Property Appraiser subjected the improvements to ad valorem taxation. Hertz successfully challenged the assessments in the trial court. In the trial court's view, the lease agreement entitled Hertz only to the beneficial use of the fixed improvements, and section 196.199(2)(b), Florida Statutes (1987), exempted the improvements from ad valorem taxation. We disagree.
The controlling statutory language, pursuant to which the Property Appraiser imposed an ad valorem tax upon the premises Hertz constructed, provides that the leasehold is to be taxed only "as intangible personal property pursuant to chapter 199 if rental payments are due in consideration of such leasehold...." § 196.199(2)(b), Fla. Stat. (1987). The terminal sentence in that section states that "[n]othing in this paragraph shall be deemed to exempt personal property, buildings, or other real property improvements owned by the lessee from ad valorem taxation." The issue we must determine is whether Hertz owns the improvements for the purpose of ad valorem taxation. The outcome of this controversy requires that we dissect the Ground Lease into its two components; one part encompassing the land and the other the improvements. We have focused our attention on prescribing the correlative rights and obligations of the parties as to the contemplated and actual improvements. No significant facts are in dispute. After thorough consideration of the artfully presented contentions of the parties and careful analysis of the pertinent portions of the Ground Lease, we are persuaded that Hertz as a matter of law is endowed with sufficient indicia of ownership justifying the imposition of an ad valorem tax upon the improvements. In reaching our endpoint in this matter, we have followed the doctrine enunciated in Helvering v. F & R Lazarus & Company, 308 U.S. 252, 255, 60 S.Ct. 209, 210, 84 L.Ed. 226 (1939), some fifty years ago, that "[i]n the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly binding."
We begin with the premise, long observed in Florida, that even though taxing statutes are liberally construed in favor of the taxpayer, State v. Thompson, 101 So.2d 381 (Fla. 1958), "all property is subject to taxation unless expressly exempt and such exemptions are strictly construed against the party claiming them." Williams v. Jones, 326 So.2d 425, 435 (Fla. 1975), appeal *251 dismissed, 429 U.S. 803, 97 S.Ct. 34, 50 L.Ed.2d 63 (1976). "The burden is on the claimant to show clearly any entitlement to the tax exemption." Volusia County v. Daytona Beach Racing and Recreational Facilities District, 341 So.2d 498, 502 (Fla. 1976), appeal dismissed, 434 U.S. 804, 98 S.Ct. 32, 54 L.Ed.2d 61 (1977). Thus, it is plain that if Hertz is the "owner" of the improvements, it is not exempt from ad valorem taxation. We turn to the relevant portions of the Ground Lease.
The title to all fixed improvements situated on the leased land remains in Hertz during the life of the Ground Lease but upon its termination, title passes to and vests in the Aviation Authority. Beginning with the date that the fixed improvements were contemplated and ready for occupancy by Hertz, and extending over the 25 year period of the Ground Lease, Hertz is empowered to depreciate fully the actual cost to it of the fixed improvements on a straight line basis without any allowance for salvage. In the event the Ground Lease is terminated prior to its expiration because of the Aviation Authority's need for the land or Hertz's cessation of business at the airport, the Aviation Authority is obligated to purchase the fixed improvements from Hertz in an amount equal to the actual cost to Hertz less the benefit of depreciation Hertz has enjoyed to the nearest complete month of the consumed portion of the 25 year term, but in no event will the purchase price to the Aviation Authority exceed $500,000. Notwithstanding that the Aviation Authority preserved to itself the ability to regulate the nature of the improvements and their modification, Hertz has at all times been free to initiate the construction and alteration of the premises, without cost to the Aviation Authority. Hertz must maintain the premises, again, without cost to the Aviation Authority. Similarly, Hertz is required, at its expense, to procure and maintain fire insurance upon all fixed improvements with appropriate endorsements protecting the Aviation Authority's contingent interest in the premises. The Ground Lease also provides that Hertz will pay all taxes assessed or imposed upon the land or any structure erected or installed upon the demised premises.
In the light of the boundaries marked by the principles announced in Williams and Volusia County, we have concentrated upon the views Hertz has entreated us to adopt. Hertz contends that it is has only a possessory interest in the improvements and holds nothing more than a bare legal title to the premises. In urging affirmance of the final summary judgment, Hertz emphasizes section 196.199(7), Florida Statutes (1987), which provides that "[p]roperty which is originally leased for 100 years or more, exclusive of renewal options ... shall be deemed to be owned for purposes of this section." Thus, says Hertz, because its Ground Lease is limited to a term of less than 100 years, it cannot be deemed an "owner" of the improvements. We reject the contention. Section 196.199(7) plays no part in determining Hertz's status as the owner of the improvements. Simply stated, we do not perceive the sweep of the word "owned" appearing in section 196.199(2)(b) to be measurable exclusively by section 196.199(7). Section 196.199(7) is a legislative declaration, the purpose and effect of which are confined to its terms. There is nothing within section 196.199(7) barring the examination of extrinsic criteria in deciding a question of ownership under section 196.199(2)(b). See Hialeah, Inc. v. Dade County, 490 So.2d 998 (Fla.3d DCA), rev. denied, 500 So.2d 544 (Fla. 1986). Hertz asserts that its lack of unfettered use and enjoyment and inability to alienate the premises forecloses ownership. Although those elements are frequently characteristic of ownership, their absence alone, in the presence of other factors, does not demand a finding, as in this instance, that the entity in possession of the property is not the owner. See Mikos v. King's Gate Club, Inc., 426 So.2d 74 (Fla. 2d DCA 1983) (dominion over property is equivalent to ownership). The Ground Lease convinces us that Hertz possesses and exercises sufficient dominion over the improvements warranting the conclusion that it is the owner subject to ad valorem taxation.
*252 The first district's decision in Bell v. Bryan, 505 So.2d 690 (Fla. 1st DCA), rev. denied, 513 So.2d 1060 (Fla. 1987), does not in any degree detract from our determination that Hertz' improvements are susceptible of ad valorem taxation. In Bell, the immediate effect of the arrangement not only created a leasehold interest in the real property owned by Escambia County upon which lessees placed structures but also vested ownership of such improvements in the county. In that context, the first district agreed with the trial court that the improvements were as much a part of the leasehold estate as was the underlying land. Here, by contrast, title to the property remains in Hertz throughout the duration of the lease. In the event the lease is prematurely terminated by the Aviation Authority or abandoned by Hertz, the property passes to the Aviation Authority through payment to Hertz of the improvements' cost, less depreciation, not to exceed $500,000. Even though pretermission of the Ground Lease is only a potential event, its non-occurrence is not significant in resolving whether Hertz is the owner of the improvements. We agree with the Property Appraiser's logic that if Hertz does not own the property, it has nothing to sell to the Aviation Authority should either of the conditions imposed by that document trigger a sale and purchase. On the other hand, if the Ground Lease is not interrupted and endures for twenty-five years, title to the improvements is conferred upon the Aviation Authority without compensation. That the Aviation Authority is not obliged to pay Hertz for title to the improvements at the end of the twenty-five year period might arguably suggest that the Authority owned the improvements from the outset of the Ground Lease. A more potent indicator of the Aviation Authority's ownership of the building during the life of the Ground Lease, however, would be Hertz' payment of rent during that term. That requirement is noticeably absent. It is manifest that Hertz's proprietary use of the improvements for its commercial objectives, when coupled with the benefit of recapturing some amount of its capital investment through depreciation, was perceived by it from the beginning as ample compensation for subsequently parting with title.
Based upon the foregoing we reverse and vacate the final summary judgment and remand this matter for further proceedings consistent with this opinion.
HALL and PARKER, JJ., concur.