939 So.2d 130 (2006)
BROWARD COUNTY, Appellant,
v.
ELLER DRIVE LIMITED PARTNERSHIP, a Florida Limited Partnership, Appellee.
No. 4D04-3895.
District Court of Appeal of Florida, Fourth District.
September 6, 2006.
Andrew J. Meyers, James D. Rowlee and Paul S. Figg of the Broward County Attorney's Office, Fort Lauderdale, for appellant.
Clifford M. Stein, Miami Beach, for appellee.
STEVENSON, C.J.
This appeal stems from the 1995 lawsuit between Broward County and its property appraiser, wherein Broward County sought a declaratory judgment that county-owned property is immune from taxation. During the litigation, Eller Drive, one of Broward County's lessees, intervened and requested a declaration that (1) Broward County is immune from taxation and (2) neither Broward County nor Eller Drive is liable for taxes assessed on Broward County's properties. Without determining what property Broward County owned, the trial court held that county-owned property is immune from taxation. On appeal, this court affirmed the ruling that county-owned property, leased for non-governmental purposes, is immune from ad valorem taxation. See Markham v. Broward County, 825 So. 2d 472 (Fla. 4th DCA 2002).
In light of this court's decision, Eller Drive moved the trial court to declare the prior assessments void and to refund the ad valorem taxes it previously paid. The trial court granted Eller Drive's motion, ruling that the building located on the leased premises is owned by Broward County and therefore immune from ad valorem taxation. Broward County now challenges this post-judgment order. We reverse as an examination of the lease and relevant case law compels the conclusion that Eller Drive owns the building.
The parties agree the standard of review is de novo since the trial court determined, based on the lease's construction and as a matter of law, that Broward County owns the building. See Leisure Resorts, Inc. v. City of West Palm Beach, 864 So. 2d 1163, 1166 (Fla. 4th DCA 2003); Lawyers Title Ins. Co. v. Novastar Mortgage, Inc., 862 So. 2d 793, 797 (Fla. 4th DCA 2003), review denied, 880 So. 2d 1212 (Fla. 2004). We also acknowledge the basic premises that taxing statutes are to be construed liberally in favor of the taxpayer and that all property is subject to taxation unless expressly exempt. See Williams v. Jones, 326 So. 2d 425, 435 (Fla. 1975); State ex rel. Wedgworth Farms, Inc. v. Thompson, 101 So. 2d 381 (Fla. 1958).
Chapter 196 of the Florida Statutes, entitled "Exemptions," provides that personal property, buildings, or other real property improvements located on government property, but owned by a lessee of that government property, are not exempt from ad valorem taxation. See § 196.199(2)(b), Fla. Stat. Several cases have acknowledged the State's authority to tax improvements upon real property separate from the land itself. See Marathon Air Servs., Inc. v. Higgs, 575 So. 2d 1340 (Fla. 3d DCA 1991) (finding that a building constructed on county-owned land was subject to ad valorem taxation since the lease expressly provided that title to fixed improvements would remain in the lessee during the term of the lease); Parker v. Hertz Corp., 544 So. 2d 249 (Fla. 2d DCA 1989) (finding that a building constructed on county-owned land was owned by the lessee and was subject to ad valorem taxation where the lease provided that title to the improvements vested in the lessor upon the lease's termination); Bell v. Bryan, 505 So. 2d 690 (Fla. 1st DCA 1987) (finding that improvements constructed on county-owned land belonged to the county and were not subject to ad valorem taxation where lease documents provided that title to any building erected on the demised premises by lessee would immediately vest in the county). The lease in the instant case does not expressly state which party has ownership of the building during the term of the lease. Therefore, the question here is whether Eller Drive, by virtue of the lease's provisions, is "endowed with sufficient indicia of ownership" of the building to justify the imposition of an ad valorem tax upon the improvements. Parker, 544 So. 2d at 250. We conclude the answer is yes.
In 1979, Port Everglades Authority, the lessor and Broward County's predecessor-in-interest, entered into a fifty-year lease with Port Everglades Executive Center, the lessee and Eller Drive's predecessor-in-interest. The "Demise" was described therein as "vacant property located at Port Everglades," but the lease acknowledged that the lessee would soon construct a building on the premises.[1] The lease required Port Everglades Executive Center to construct a six-story office building that was approximately 95,000 square feet. Paragraph 2 of the lease specified that the building could only include "club rooms, commercial office space, exhibition areas, parking, and dining facilities." No construction could be undertaken until Port Everglades Executive Center submitted detailed plans and obtained approval from Port Everglades Authority. Additionally, the lessee is required "to endeavor to obtain tenants whose business shall be supportive of and contributes to the development of Port Everglades as an international business and maritime center" and those tenants "shall be given preference for leases in the demised premises over other prospective tenants." Nonetheless, the lessee can lease or sublease office space or other facilities without obtaining the lessor's permission. The lease further provides that "[u]pon termination of this Lease, the improvements located on the Demised Land shall be and become the property of Lessor."
Although the lessor is given a degree of control over the building, we see nothing in the lease which would divest Eller Drive, during the term of the lease, of the ownership interest that any entity would ordinarily possess over a building which it constructed with its own funds and possesses. "In the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly binding." Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 255 (1939). In short, the lease provides Eller Drive with sufficient dominion over the building to conclude that Eller Drive owns the structure. For example, although Eller Drive is obligated to "endeavor to obtain tenants whose business shall be supportive of and contributes to the development of Port Everglades as an international business and maritime center," Eller Drive is not required to refuse other potential tenants in favor of the preferred tenants. Nor is Eller Drive required to obtain Broward County's permission before leasing "office space or other facilities in the improvements." In our view, the conclusion that Eller Drive owns the building during the term of the lease is buttressed by the provision specifically providing that at the end of the term of the lease, the improvements located on the demised land "shall be and become" the property of Broward County.
Of significance to the trial court was the lease's provision that abates rent if any portion of the "Real Estate or the improvements or Buildings" is taken by eminent domain:
If at any time during the term of this Lease the Demised Real Estate or the improvements or Buildings thereon, or any portion thereof, be taken or appropriated or condemned by reason of eminent domain, there shall be such division of the proceeds and awards and such abatement of rent as shall be just and equitable under the circumstances. . . . In general, it is the intent of this paragraph that upon condemnation the parties hereto shall share in the awards to the extent that their interests respectively are depreciated, damaged or destroyed by the exercise of the right of eminent domain.
The trial court reasoned that "if the County has no ownership interest in the building during the term of the lease, there would be no abatement of the rent if the building, or a portion thereof, was taken by eminent domain." We believe, regardless of which entity owned the building, it could be commercially reasonable for the parties to agree that rent would be abated if the building was taken by eminent domain.
In reaching our decision, we are persuaded by the Second District's opinion in Parker. There, Hertz Corporation entered into a lease with the Hillsborough County Aviation Authority whereby Hertz leased land at the Tampa Airport for the purpose of operating a car rental business. See Parker, 544 So. 2d at 250. The terms of the lease required Hertz to erect improvements on the land. See id. Subsequently, the property appraiser determined the improvements were subject to ad valorem taxation. See id. Although the lease provided that title to the property would reside with Hertz during the term of the lease, Hertz successfully argued before the trial court that the buildings were owned by the Hillsborough County Aviation Authority and were exempt from ad valorem taxation. See id.
On appeal, the Second District looked beyond the mere declaration that Hertz would maintain title to the property during the term of the lease, and concluded that Hertz was "endowed with sufficient indicia of ownership justifying the imposition of an ad valorem tax upon the improvements." 544 So. 2d at 250. The court in Parker stated:
Hertz asserts that its lack of unfettered use and enjoyment and inability to alienate the premises forecloses ownership. Although these elements are frequently characteristic of ownership, their absence alone, in the presence of other factors, does not demand a finding, as in this instance, that the entity in possession of the property is not the owner. See Mikos v. King's Gate Club, Inc., 426 So. 2d 74 (Fla. 2d DCA 1983) (dominion over property is equivalent to ownership). The Ground Lease convinces us that Hertz possesses and exercises sufficient dominion over the improvements warranting the conclusion that it is the owner subject to ad valorem taxation.
Id. at 251.
Although the lease in the instant case and that in Parker are not identical, they have significant similarities. The most notable difference is the fact that the Parker lease specifically provided that Hertz would have title to the building during the term of the lease. Yet, the Second District gave this declaration little significance and, instead, looked at the "substance and realities" of the agreement between the parties. The similarities between the leases mandate the same outcome. Both Hertz and Eller Drive leased the land and constructed the buildings for commercial purposes. With the exception of repairs, partitions, and alterations, Eller Drive could not begin construction without obtaining Broward County's approval. Eller Drive also agreed to be financially responsible for the improvements constructed on the land. Similarly, the Aviation Authority reserved the right to regulate Hertz's improvements, and Hertz agreed to be financially responsible for the construction. See id. Both Eller Drive and Hertz are also required to be financially responsible for procuring and maintaining insurance and for paying any taxes assessed upon the property. See id. Both leases also specify that at the end of the lease, the lessor is given title to the improvements without paying the lessee compensation.
Eller Drive asserts the differences between the leases establish that Broward County owns the building. For instance, if Hertz's lease terminated early because Hertz ceased its business at the airport or the Aviation Authority needed the land, the Aviation Authority was required to purchase the improvements from Hertz. See id. at 251. In contrast, Broward County is not required to compensate Eller Drive if its lease is terminated early. The Second District supposed that not paying Hertz for the improvements at the lease's conclusion "might arguably suggest that the Authority owned the improvements from the outset of the Ground Lease," but concluded:
It is manifest that Hertz's proprietary use of the improvements for its commercial objectives, when coupled with the benefit of recapturing some amount of its capital investment through depreciation, was perceived by it from the beginning as ample compensation for subsequently parting with title.
Id. at 252. The court noted that a "more potent indicator" of the Aviation Authority's ownership of the building would have been Hertz's payment of rent during the term of the lease  a requirement which was "noticeably absent." Id. Likewise, in the instant case, a 1993 assignment specifically refers to the lease as a "Ground Lease" and rent is calculated based on the square footage of the land as outlined in the mete and bounds description in the original lease and the subsequent amendments.[2]
Finally, we are not persuaded by Eller Drive's argument that a double taxation will occur if Eller Drive is required to pay ad valorem taxes for the building and a tax on the lease. Directly on point is Capital City Country Club, Inc. v. Tucker, 613 So. 2d 448 (Fla. 1993). There, Capital City Country Club leased land owned by the City of Tallahassee. See id. at 450. The club contended that requiring it to pay real estate taxes on the land and an intangible tax on the lease would result in double taxation. See id. When rejecting that argument, the Florida Supreme Court stated "[t]he intangible tax is being imposed on the rights afforded to the club under the lease," and "[t]he real estate taxes, on the other hand, are being imposed on the land itself." Id. at 452. Since there were two separate taxpayers and two different interests being taxed, the Court held that the taxes imposed did not violate the prohibition against double taxation. See id. In light of the foregoing, the prohibition against double taxation is not violated by the imposition of an ad valorem tax on real property and an intangible tax on a lease.
We have considered the other arguments raised on appeal, but are not persuaded thereby. We specifically reject Eller Drive's contention that the doctrine of res judicata bars Broward County from challenging the trial court's decision. "For res judicata to apply, there must be four identities: (1) identity of thing sued for, (2) identity of cause of action, (3) identity of persons and parties to the action, and (4) identity of quality or capacity of persons for or against whom the claim is made." Burns v. DaimlerChrysler Corp., 914 So. 2d 451, 453 (Fla. 4th DCA 2005). The record shows that whether Eller Drive owned the building situated on Broward County's land was not an issue in the earlier lawsuit. We therefore reverse the trial court's order directing the Broward County Tax Collector to refund ad valorem taxes and declaring void previous assessments.
Reversed.
WARNER and Hazouri, JJ., concur.
Not final until disposition of timely filed motion for rehearing.
NOTES
[1] A 1990 amendment to the lease included additional real property and states "[t]he [leased] Premises consists of 221,558.11 square feet" and "Lessee shall pay to Lessor as Basic Rent, subject to periodic adjustments . . . the sum of sixty-six cents ($.66) per square foot of the real property located in the Premises."
[2] A "ground lease" has been defined as "[a] lease of vacant land, or land exclusive of any buildings on it, or unimproved real property." BLACK'S LAW DICTIONARY 633 (5th ed. 1979).