MAY, J.
To tax or not to tax — that is the question. Broward County appeals an adverse summary judgment in which the trial court declared that Fairfield Resorts, Inc., the owner, seller, and operator of timeshares, was not responsible for collection of the county-imposed tourist development tax on Fairfield’s sale of “inspection privilege packages.” It argues the trial court erred in its application of section 125.014(3), Florida Statutes (2001), and section 31 1/2— 16, County of Broward, Florida, Code Part II, chapter 31 1/2, article II, to the packages. We disagree and affirm.
Fairfield Resorts, Inc. owns, sells, and operates timeshares at Sea Gardens Beach and Tennis Resort, Inc. and Santa Barbara Resort and Yacht Club. To entice prospective buyers, Fairfield offers a one-time inspection privilege package to prospective timeshare buyers, who pay $995 to acquire points for use at any Fairfield timeshare within twelve months. Fairfield credits the $995 toward any future purchase price. The packages can be purchased throughout the country at most Fairfield locations and can be used for up to a three-week stay at any Fairfield location.[1] Approximately 75% of these packages do not result in timeshare purchases.
As part of its regular random auditing scheme, the Broward County Revenue Collection Division audited Sea Gardens and Santa Barbara. During the audit, Broward County discovered that Sea Gardens and Santa Barbara collected and paid sales tax. on the inspection privilege packages sold in Broward County. This discovery prompted Broward County to further investigate the inspection privilege packages. During calendar years 1998, *1146 1999, and 2000, 974 packages resulted in non-owner visitor stays at Sea Gardens, and during 1999 and 2000, 137 packages were used at Santa Barbara. The audit further disclosed that Fairfield had not collected the tourist development tax for these stays.
In October 2001, Broward County provided Sea Gardens with the following notice.
Broward County presents you with a NOTICE OF AUDIT ASSESSMENT for Tourist Development Tax for the period of time during which you have been found liable on transactions subject to this tax under the Broward County Code of Ordinances, Section 31 1/2-16 during the audit period January 1998 through December 2000.
Broward County sent an identical notice to Santa Barbara for the period of January 1999 to December 2000. Fairfield filed a timely written protest to the assessments, which it later supplemented.
Following a hearing, Broward County issued two Notices of Decision sustaining the assessments, but then offered Closing Statements that resulted in a downward adjustment of the amounts owed. Fair-field’s petition for reconsideration was denied, but Broward County again offered Fairfield revised Closing Agreements further reducing the amounts due.
Fairfield filed a complaint for declaratory relief and moved for final summary judgment. The trial court entered a final summary judgment in favor of Fairfield. The court found that the legislative intent of the tourist development tax “was to tax entities that are in the business of leasing or renting their facilities to transient guests.” The court then determined that Fairfield was engaged in the business of selling timeshares, rather than leasing or renting them, thereby rendering sections 125.0104(3)(a), 212.03(1), and 212.0305(3)(a), Florida Statutes, and section 31 1/2-16 of the Broward County Code of Ordinances inapplicable.
Broward County argues that the trial court erred in finding the county’s tourist development tax does not apply to Fairfield’s sale of inspection privilege packages by incorrectly relying on section 212.03(1) to analyze whether Fairfield was in the business of leasing or renting. We agree that this provision is inapplicable,[2] but the plain meaning of section 125.0104(3)(a) provides the answer to the riddle.
As there are no disputed issues of fact, only the legal issue — construction of the taxing statute — is left to be determined. Fla. R. Civ. P. 1.510(c). We review summary judgments de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130-31 (Fla.2000); Fla. Dep’t of Revenue v. New Sea Escape Cruises, Ltd., 894 So.2d 954, 957 (Fla.2005).
The first step in statutory interpretation is to read the actual language used in the statute. Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000). We must then give that language its plain and ordinary meaning, “unless the words are defined in the statute or by the clear intent of the legislature.” Green v. State, 604 So.2d 471, 473 (Fla.1992).
Section 125.0104(3), Florida Statutes (2001) provides in part:
*1147 (a) It is declared to be the intent of the Legislature that every person who rents, leases, or lets for consideration any living quarters or accommodations in any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, room-inghouse, ... or condominium for a term of 6 months or less is exercising a privilege which is subject to taxation under this section....
(b) Subject to the provisions of this section, any county in this state may levy and impose a tourist development tax on the exercise within its boundaries of the taxable privilege described in paragraph (a)....
Pursuant to this provision, Broward County enacted its own tourist development tax ordinance. That ordinance provides:
(1) There is hereby levied and imposed a tourist development tax throughout Broward County, Florida, at a rate of two percent (2%) of each whole and major fraction of each dollar of the total rental charged [sic] every person who rents, leases or lets for consideration any living quarters or accommodations in any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, rooming house, ... or condominium for a term of six (6) months or less is exercising a privilege which is subject to taxation under this section, unless such living quarters or accommodations are exempt according to the provisions of Chapter 212, F.S.
County of Broward, Fla., Code Part II, ch. 311/2, art. II, § 31 1/2-16 (1980).
The plain wording of these tourist development tax provisions do not include either timeshares or inspection privilege packages. Indeed, timeshares and inspection privilege packages did not exist when the statute and ordinance were enacted. And, evidence at the summary judgment hearing revealed that when Broward County requested the legislature to include timeshares within the purview of section 125.0104, it declined.
Broward County suggests, however, that the inspection privilege packages fall within the purview of the statute and ordinance as they are synonymous with the renting of a roominghouse.[3] To reach such a conclusion would require this court to look beyond the clear wording of the statute. We decline to do so.
To the extent it could be' argued that the statute is ambiguous in its application to timeshares or inspection privilege packages, we resort to a long-standing principle. “It is a fundamental rule of construction that tax laws are to be construed strongly in favor of the taxpayer and against the government, and that all ambiguities or doubts are to be resolved in favor of the taxpayer.” Maas Bros. v. Dickinson, 195 So.2d 193, 198 (Fla.1967). See also Broward County v. Eller Drive Ltd. P’ship, 939 So.2d 130 (Fla. 4th DCA 2006). In this case, all that is required in construing this statute and ordinance is to give the words used their plain meaning. Timeshares and inspection privilege packages are simply not included in the statute or ordinance. They are therefore not subject to the tourist development tax.

Affirmed.

POLEN and GROSS, JJ., concur.

. The purchase of the packages in Broward County does not mean that the purchaser will use the purchased points toward a stay in a timeshare located in Broward County. Correspondingly, a person could purchase a package in Denver, Colorado, but ultimately use the purchased points toward a stay in Broward County.

. Section 212.03(1), Florida Statutes (2001), regulates the imposition and administration of the state level "transient rentals tax” and is inapplicable to the county "tourist development tax” at issue here. Section 125.0104 does not have the same requirement that the person engage "in the business of renting, leasing, letting or granting a license....” § 212.03(1), Fla. Stat. (2001).

. "We acknowledge that the statutory definition of a roominghouse is broad. See § 212.02(10)(c), Fla. Stat. (2001).