354 So.2d 878 (1978)
LYKES BROTHERS, INC., Appellant,
v.
CITY OF PLANT CITY et al., Appellees.
No. 50356.
Supreme Court of Florida.
January 19, 1978.
Charlie Luckie, Jr. and Claude H. Tison, Jr., of MacFarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
Paul S. Buchman, City Atty., Plant City, Jeannette M. Haag, Asst. County Atty., Tampa, and Robert L. Shevin, Atty. Gen., and Harold F.X. Purnell, Asst. Atty. Gen., Tallahassee, for appellees.
ENGLAND, Justice.
Can a city levy ad valorem property taxes in 1975 on the properties of a non-public corporate tenant who in 1964 had been induced to locate its meat packing plant on city-owned land in exchange for the city's promise never to impose municipal taxes? This question was answered in the affirmative by the Hillsborough County Circuit *879 Court, in a decision which has now been brought to us for review.[1]
In 1964, Plant City sought to make use of a tract of undeveloped land it owned outside its corporate limits by creating an industrial park. The city invited Lykes Bros., Inc. ("Lykes") to move its meat packing plant from Tampa to the proposed industrial park, promising in the formal lease agreement never to annex or to impose municipal taxes on the Lykes property.[2] Lykes did move its Tampa operation to Plant City, constructing a new packing plant on the leased property and eventually employing some 450 persons.[3] The contract rent of $2,478 per year has faithfully been paid by Lykes to the city.
The leased property remained outside the city limits until 1974, when the Legislature by special act incorporated the industrial park within its boundaries.[4] Although Lykes promptly notified city officials of the lease covenant and attempted to prevent the assessment of ad valorem taxes, the property was nonetheless placed on the 1975 ad valorem tax rolls.[5] Lykes then filed this suit seeking declaratory and injunctive relief, which the trial court denied.
The trial court refused to exonerate Lykes from Plant City's tax levies on two principal grounds. It held that the city's contractual agreement for tax exoneration was beyond the city's authorized power, or "ultra vires", and that the so-called savings (or grandfather) law for pre-1972 leasehold interests, Section 196.199(3), Florida Statutes (1973), is inapplicable to this case or, insofar as it pertains to private lessees on governmental lands who use the property for non-public purposes, is invalid. Lykes, of course, assails these conclusions here.
1. In holding that a municipality lacks the power to contract away its taxing authority over property used for private purposes, the trial court expressly relied on various constitutional provisions[6] and the decisions rendered in City of Naples v. Conboy, 182 So.2d 412 (Fla. 1965), Tampa Shipbuilding & Engineering Co. v. City of Tampa, 102 Fla. 549, 136 So. 458 (1931), and City of Safety Harbor v. City of Clearwater, 330 So.2d 840 (Fla.2d DCA 1976).
Lykes does not argue against the general inability of a municipality to contract away its taxing power, but it strenuously urges that we should view this transaction as nothing more than a net lease in which the city, acting solely in a proprietary capacity, has agreed to assume responsibility for the burden of Lykes' ad valorem municipal taxes. Lykes suggests, simply, that a municipal landlord has the same contract powers as private lessors with respect to the allocation of property taxes between landlord and tenant.[7]
Despite Lykes' inventive characterization of its lease with the city, it is clear that the lease itself called for tax exoneration. Plant City attempted by every means at its disposal to free Lykes from all tax burdens that might later be imposed. *880 Paragraph 7 of the lease provided that the land would never be annexed into the city limits, but that if it was, then Lykes' properties would not be "rendered liable" for taxes. It further provided that if taxes were levied then the city "agrees to pay said taxes and to indemnify" Lykes for the tax liability and all attendant expenses. The purpose of these provisions, as recited in the lease, was to assure Lykes that its properties "shall be completely free from all municipal taxes." Absolutely nothing in the agreement suggests that rental payments were adjusted to reflect the netting effect which would result from now-routine, commercial tax-allocation provisions, and neither this Court nor Lykes' counsel can now re-write the parties' 1964 contract.
As to whether a city's tax exoneration contract is valid, our decisions uniformly hold that municipal contracts promising not to impose taxes, or granting tax exemptions, are ultra vires and void in the absence of specific legislative authority. See, e.g., Tampa Shipbuilding & Engineering Co. v. City of Tampa, 102 Fla. 549, 136 So. 458 (1931), and City of Tampa v. Kaunitz, 39 Fla. 683, 23 So. 416 (1898). At the time this contract was made the only legislative grant of authority pertaining to municipal leases provided that leasehold interests such as that contemplated by this agreement "shall be assessed and taxed to the same extent and in the same manner as other real or personal property" unless the use fell within certain enumerated "public purpose" exceptions.[8] Lykes does not contend that its use of the property was in any way devoted to a "public purpose".
It follows that, in the absence of statutory authority, Plant City lacked the power to covenant against the imposition of ad valorem taxes on Lykes' property, and the trial court correctly held the lease provision to be void. City of Naples v. Conboy, 182 So.2d 412 (Fla. 1965).
2. Lykes next contends that an ultra vires act of a municipality can always be validated by subsequent legislative ratification if the act is one which could have been authorized initially,[9] and that Section 196.199(3), Florida Statutes (1973), did precisely that with respect to the tax on its leasehold interest in the city's property.[10] The trial court determined that Section 196.199(3) does not pertain to governmental leases for non-public purposes, and that it would be unconstitutional if it did.
The disputed portion of Section 196.199, entitled "Exemptions for property owned by governmental units", reads:
"(3) Nothing herein or in § 196.001 shall require a governmental unit or authority to impose taxes upon a leasehold estate created prior to December 31, 1971 if the lease agreement creating such leasehold estate contains a covenant on the part of such governmental unit or authority as lessor to refrain from imposing taxes on the leasehold estate during the term of the leasehold estate... ."
We have no doubt that subsection (3) of the statute applies to lease arrangements between governmental owners and private lessees using the property for non-public purposes. Section 196.001, Florida Statutes (1973), provides that all property is subject to taxation unless expressly exempted. Governmental property exemptions appear in Section 196.199. Subsection (1) provides an exemption for property both owned and used by governmental units, and subsection *881 (2) exempts property owned by governmental units but used by private lessees for certain public purposes. Subsection (3) does not distinguish between users or uses. Lykes forcefully argues that if subsection (3) were confined to leaseholds in which the private lessee uses the property predominantly for public purposes, as the trial court has ruled and Plant City contends, the subsection would have no subject matter on which to operate, since leasehold interests of that type are already exempt from taxation under subsection (2). We agree. Not only did the legislation ostensibly apply to all pre-1972 governmental lessees, without regard to purpose or user as in the related provisions, but the construction urged upon us by Plant City and the Attorney General[11] would require us to hold that the Legislature enacted a redundancy. Section 196.199(3) necessarily applies to private lease agreements such as Lykes'.
Our last inquiry, then, is whether this savings clause for pre-1972 contracts benefits Lykes. In ruling that it does not, the trial judge stated that the statute would be constitutionally infirm if applied to Lykes. He referred to Straughn v. Camp, 293 So.2d 689 (Fla. 1974), Hillsborough County Aviation Authority v. Walden, 210 So.2d 193 (Fla. 1968), and City of Bartow v. Roden, 286 So.2d 228 (Fla.2d DCA 1973), from which we conclude he meant that Florida's 1968 Constitution requires the taxation of private leaseholds in government-owned property used for non-public purposes.[12] We agree that the Constitution requires taxation of these leaseholds, but we find it unnecessary to reach the constitutional question on which the trial judge ruled.
Lykes' contention with respect to the application and validity of Section 196.199(3)  that an ultra vires municipal contract can be legislatively ratified if it could have been authorized initially  is generally correct, but it neglects an additional requirement. The legislative attempt at ratification must itself be consistent with the Constitution.[13] At the time Section 196.199(3) was enacted, the Legislature no longer possessed the constitutional power to authorize tax exoneration of property owned by a municipality and used by a private lessee predominantly for non-public purposes.[14] Moreover, we do not read into the language of Section 196.199(3) a legislative attempt to exceed this constitutional limitation by giving legal effect to otherwise invalid pre-1972 contracts, and thereby creating a new category of tax exemption.
Inasmuch as Section 196.199(3) has no application to Lykes' contract with Plant City, there was no need for the trial court to consider its constitutionality. The action of the trial court in entering summary final judgment for Plant City, however, is approved.
It is so ordered.
OVERTON, C.J., and BOYD, SUNDBERG, HATCHETT and KARL, JJ., concur.
ADKINS, J., concurs in result only.
NOTES
[1] In the course of analysis the circuit court declared invalid § 196.199(3), Fla. Stat. (1973), insofar as it applies to governmental property devoted to private, as opposed to public, purposes. Direct appeal of the trial court's order to this Court is authorized by Art. V, § 3(b)(1), Fla. Const.
[2] The lease recited that total municipal tax exoneration was an inducement for Lykes to relocate, and stated that if taxes were ever imposed during the lease term then the city would either pay the taxes or reimburse Lykes for their payment.
[3] All expenses of moving the operation and constructing the new plant were borne by Lykes.
[4] Chapter 74-596, Laws of Florida.
[5] Lykes' leasehold interest and tangible personal property were assessed at $5,889,006, giving rise to a total municipal tax liability of $47,112.05.
[6] Art. VII, § 10, Fla. Const. (prohibiting a municipality from lending or using its taxing power or credit for private enterprise); Art. IX, §§ 1 and 5, Fla. Const. (1885) (requiring uniform tax on all non-exempt property); and Art. XVI, § 16, Fla. Const. (1885) (requiring taxation of all non-exempt corporate property).
[7] Plant City's charter specifically so states. Ch. 13282, § 8, Laws of Florida, Special Acts of 1927.
[8] § 192.62, Fla. Stat. (1963), enacted by Ch. 61-266, Laws of Florida. This provision can be viewed as a response to this Court's decision in Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571 (Fla. 1957), where it was held that such leaseholds were not taxable in the absence of statutory authority. It was subsequently reenacted verbatim as § 196.25, Fla. Stat. (1969), by Ch. 69-55, Laws of Florida, and remained in effect until the 1971 general revision of the tax statutes. Ch. 71-133, Laws of Florida.
[9] In support of this contention, Lykes refers us to City of Gainesville v. Board of Control, 81 So.2d 514, 518 (Fla. 1955), and 56 Am.Jur.2d Municipal Corps. § 512 (1971), among other authorities.
[10] The 1975 assessed value of Lykes' leasehold interest was $4,477,125, producing a tax liability of $35,817.
[11] The Attorney General appears on behalf of the Department of Revenue, a named defendant in this lawsuit.
[12] In Straughn v. Camp, 293 So.2d 689, 696 (Fla. 1974), we said that "where the predominant use of governmentally leased land is for private purposes the Constitution requires that the leasehold be taxed." City of Bartow v. Roden, 286 So.2d 228 (Fla.2d DCA 1973), suggests that all municipally-owned property not used exclusively for a public purpose must be taxed, by implication from Art. VII, § 3, Fla. Const. Hillsborough County Aviation Authority v. Walden, 210 So.2d 193, 195 (Fla. 1968), held that the Constitution "is a limitation upon and not a grant of the power of the legislature to exempt property from taxation."
[13] See, e.g., C. Rhyne, Municipal Law 62 (1957); 56 Am.Jur.2d Municipal Corporations § 512 (1971); 23 Fla.Jur. Municipal Corporations § 193 (1959).
[14] Although Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571 (Fla. 1957), had held that the 1885 Constitution did not require the Legislature to impose ad valorem taxes on private-use leaseholds in governmental property, decisions construing the 1968 Constitution make clear that taxation of such property is no longer discretionary. See note 12 above. Certainly there was no authorization in Art. XII, § 7(a), Fla. Const., which states that pre-existing contracts shall "continue" to be valid.