613 So.2d 448 (1993)
CAPITAL CITY COUNTRY CLUB, INC., etc., Petitioner,
v.
Katie TUCKER, etc., et al., Respondents.
No. 78201.
Supreme Court of Florida.
February 4, 1993.
*449 William C. Owen and F. Townsend Hawkes of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., and Charles A. Stampelos of McFarlain, Wiley, Cassedy & Jones, P.A., Tallahassee, for petitioner.
Robert A. Butterworth, Atty. Gen. and Joseph C. Mellichamp, III, Sr. Asst. Atty. Gen., Tallahassee, for Dept. of Revenue.
Benjamin K. Phipps of Fine, Jacobson, Schwartz, Nash, Block & England, Tallahassee, for Dick Brand.
Peter Guarisco, Tallahassee, for John F. Chafin.
Susan H. Churuti, County Atty. and B. Norris Rickey, Sr. Asst. County Atty. Clearwater, amicus curiae for Jim Smith, as Property Appraiser of Pinellas County.
Robert A. Ginsburg, Dade County Atty. and Thomas W. Logue, Asst. County Atty., Miami, amicus curiae for Joel Robbins, as Property Appraiser of Dade County.
*450 Larry Levy, Tallahassee, amicus curiae for Property Appraiser's Ass'n of Florida.
S. LaRue Williams of Kinsey Vincent Pyle, P.A., Daytona Beach, amicus curiae for Intern. Speedway Corp.
GRIMES, Justice.
We review Capital City Country Club, Inc. v. Tucker, 580 So.2d 789 (Fla. 1st DCA 1991), in which the court certified a question as one of great public importance. We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
Capital City Country Club, a nonprofit corporation, leases 192 acres for use as a private golf course in the City of Tallahassee for a rental of $1 per year. The lease was executed in 1956 for a period of ninety-nine years and requires the club to be responsible for all ad valorem taxes levied against the property.
The club filed suits, which were later consolidated, challenging the assessment of ad valorem real estate taxes on the property for the tax years of 1988 and 1989. The club asserted that the property was exempt from real estate taxes because the club had paid intangible taxes on its leasehold interest in the property. Alternatively, the club contended that even if the property was subject to real estate taxes, the value of the club's leasehold interest subject to intangible taxes should have been deducted from the fair market value of the property for the purpose of determining the real estate taxes. The trial court held that real estate taxes were properly imposed against the property based upon its fair market value without deduction of the leasehold interest. The district court of appeal affirmed this judgment.
The question as certified appears to have been inadvertently misworded. Therefore, we have chosen to present the issues in two separate questions which are reworded as follows:
I.
IS LAND OWNED BY A MUNICIPALITY EXEMPT FROM REAL ESTATE TAXATION IF IT WAS LEASED TO A PRIVATE PARTY PRIOR TO APRIL 15, 1976, AND IS USED FOR NONGOVERNMENTAL PURPOSES?
II.
IF THE LAND IS SUBJECT TO REAL ESTATE TAXATION, SHOULD THE VALUE OF THE LEASEHOLD INTEREST BE EXCLUDED FROM THE APPRAISAL IN ORDER TO ARRIVE AT A LEGAL ASSESSMENT?
In answering these questions, we find it is unnecessary to recount the erratic path which the taxing of interests created when government-owned real property is leased for nonpublic purposes has taken in Florida.[1] We wish to emphasize, however, that in this case it is the real property that is being taxed rather than the leasehold interest in that property. Furthermore, it is a municipality which owns the property rather than some other governmental entity.
Article VII, section 4 of the Florida Constitution requires that there be a just valuation of all property for ad valorem taxation. However, article VII, section 3 of the Florida Constitution provides in part:
(a) All property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation.
While the club concedes that the golf course is not being used for municipal or public purposes, it points out that intangible taxes have been imposed upon its leasehold interest. The club contends that the property is exempt from an additional real estate tax by section 196.199(4), Florida Statutes (1991), which reads as follows:
Property owned by any municipality, agency, authority, or other public body corporate of the state which becomes subject to a leasehold interest or other possessory interest of a nongovernmental lessee other than that described in paragraph (2)(a), after April 14, 1976, shall be subject to ad valorem taxation unless the lessee is an organization *451 which uses the property exclusively for literary, scientific, religious, or charitable purposes.
The club asserts that when this section was passed as part of chapter 80-368, Laws of Florida, the legislature intended to exempt from real estate taxation leases entered into before April 15, 1976. While it may well be that this is what the legislature intended, the question arises as to whether it had authority to do so.
In Lykes Bros., Inc. v. City of Plant City, 354 So.2d 878 (Fla. 1978), the city leased land to a meat packing company in 1964 with the promise never to impose municipal taxes on the company's property in order to induce it to relocate its plant. However, after the land was annexed into the city limits, the city, in 1975, began to impose ad valorem taxes on the company's leasehold[2] and tangible personal property. We first held that in the absence of statutory authority, the city's agreement to withhold the imposition of taxes on the property was ultra vires and void. Id. at 880. However, Lykes contended that the city's promise was subsequently ratified by section 196.199(3), Florida Statutes (1973), which authorized municipalities to covenant to withhold taxes on leasehold estates created before December 31, 1971. We agreed with the trial judge's conclusion that the constitution required taxation of private leaseholds in government-owned property used for nonpublic purposes. Id. at 881. However, we found it unnecessary to reach the question of the constitutionality of section 196.199(3) if it were construed to pertain to pre-1972 governmental leases for nonpublic purposes. Id. Instead, we stated:
Lykes' contention with respect to the application and validity of Section 196.199(3)  that an ultra vires municipal contract can be legislatively ratified if it could have been authorized initially  is generally correct, but it neglects an additional requirement. The legislative attempt at ratification must itself be consistent with the Constitution. At the time Section 196.199(3) was enacted, the Legislature no longer possessed the constitutional power to authorize tax exoneration of property owned by a municipality and used by a private lessee predominantly for non-public purposes. Moreover, we do not read into the language of Section 196.199(3) a legislative attempt to exceed this constitutional limitation by giving legal effect to otherwise invalid pre-1972 contracts, and thereby creating a new category of tax exemption.
354 So.2d at 881 (footnotes omitted).
The Fifth District Court of Appeal passed directly upon the issue before us in City of Orlando v. Hausman, 534 So.2d 1183 (Fla. 5th DCA 1988), review denied, 544 So.2d 199 (Fla. 1989). In that case, a number of private tenants leased property from the City of Orlando for nonmunicipal or nonpublic purposes. They contended that the properties were exempt from real estate taxation because their leasehold interests were subject only to intangible taxes. Id. Relying on the prior decision in Orlando Utilities Commission v. Milligan, 229 So.2d 262 (Fla. 4th DCA 1969), cert. denied, 237 So.2d 539 (Fla. 1970), the court held that because the property was being used for private purposes, there was no exemption from real property taxation. But see Miller v. Higgs, 468 So.2d 371 (Fla. 1st DCA), review denied, 479 So.2d 117 (Fla. 1985). In response to the argument that the leasehold interests were subject only to intangible taxation, the court pointed out that there was no evidence that the property appraiser had included the leasehold interests of the tenants in his assessment. Hausman, 534 So.2d at 1185.
The legislature is without authority to grant an exemption from taxes where the exemption does not have a constitutional basis. Archer v. Marshall, 355 So.2d 781 (Fla. 1978). Thus, we conclude that the legislature could not constitutionally exempt from real estate taxation municipally owned property under lease which is not *452 being used for municipal or public purposes. We cannot accept the contention that by imposing a state intangible tax which cannot exceed two mills, art. VII, § 2, Fla. Const., on nonpublic leaseholds of municipal land, the legislature can exempt the land from the higher level of local taxation permitted by article VII, section 9 of our constitution. However, we do not believe it is necessary to hold any portion of section 196.199 unconstitutional.
If it is reasonably possible to do so, we are obligated to interpret statutes in such a manner as to uphold their constitutionality. State v. Gale Distributors, Inc., 349 So.2d 150 (Fla. 1977). Further, it is well settled that all property is subject to taxation unless expressly exempt, and exemptions are strictly construed against the party claiming them. State ex rel. Szabo Food Servs., Inc. v. Dickinson, 286 So.2d 529 (Fla. 1973). Section 196.199(4) does not specifically exempt from real estate taxes land which is subject to a lease entered into before April 15, 1976; it does so only by inference. Therefore, in order to sustain its constitutionality, we do not interpret section 196.199(4) as exempting from real estate taxes land leased from a municipality for nongovernmental purposes before April 15, 1976. Consequently, we hold that the golf course property is subject to real estate taxation. By reason of its agreement in the lease, the club is obligated to pay these taxes.
The answer to the second certified question is controlled by our recent decisions in Valencia Center, Inc. v. Bystrom, 543 So.2d 214 (Fla. 1989), and Schultz v. TM Florida-Ohio Realty Ltd., 577 So.2d 573 (Fla. 1991). In Valencia, the property owner had entered into a pre-1965 long-term lease which was highly favorable to the lessee and which precluded the property from being used for its highest and best use. 543 So.2d at 215. The legislature had enacted a statute which directed the property appraiser to assess the property on the highest and best use permitted by the lease rather than on the basis of a use not permitted by the lease or of income which could be derived from a use not permitted by the lease. Id. at 215-16. We held that the statute was invalid because it purported to provide favored tax treatment in violation of article VII, section 4 of the Florida Constitution. Id. at 216. As a consequence of our decision, the property was taxed as though the landowner possessed the property in fee simple. Schultz was another submarket lease case in which we held that the appraisal for real estate taxes "must represent the value of all interests in the property  in other words, the fair market value of the unencumbered fee." 577 So.2d at 575.
We reject the club's contention that the imposition of real estate taxes on the fair market value of the land and the imposition of intangible taxes on the leasehold interest constitutes double taxation of the property. Intangible personal property is property which is not itself intrinsically valuable, but which derives its chief value from that which it represents. §§ 199.023(1), 192.001(11)(b), Fla. Stat. (1991). The intangible tax is being imposed on the rights afforded to the club under the lease. The real estate taxes, on the other hand, are being imposed on the land itself. In Florida, real estate taxes are collected by the county, while the intangible tax on leasehold interests is collected by the state. In this case, the club, as the holder of a leasehold interest, is legally responsible for the intangible tax. The club's responsibility for the real estate taxes, however, is contractual. It stems from the passthrough provision in the lease wherein the club agreed to pay the real estate taxes assessed against the land. Absent this provision, the city, as owner of the property, would be responsible for the real estate tax because the land is not being used for a municipal or public purpose. It is clear that the club's leasehold and the city's real property are completely separate interests. There is no unconstitutional double taxation where there are two taxpayers and two separate taxable transactions or privileges. In re Advisory Opinion to the Governor, 509 So.2d 292 (Fla. 1987).
While not a perfect analogy, assume the existence of land worth $100,000 encumbered *453 by a mortgage securing the payment of a $125,000 promissory note. The promissory note would be subject to the intangible tax based on the $125,000 face value of the note even though the value of the property securing the note was only $100,000. Under the club's theory, the real property value for ad valorem purposes would necessarily have a value of negative $25,000. The point is that the value of a person's leasehold interest has nothing to do with the value of the underlying real property for ad valorem tax purposes. In the case of a lease, the lessee's interest may or may not have value, depending on whether or not the contract rent is greater or lesser than the market or economic rent. The value of the real property for ad valorem taxation is its fair market value without regard to any leases or encumbrances on the property.
Accordingly, we answer both certified questions in the negative. We disapprove Miller v. Higgs to the extent that it conflicts with this opinion.
We approve the decision of the court below.
It is so ordered.
BARKETT, C.J., and OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
McDONALD, J., recused.
NOTES
[1] See Robert S. Goldman, II Florida State and Local Taxes, 206-217 (The Fla.Bar 1984).
[2] At that time leasehold interests in governmental property being used for nonpublic purposes were subject to real property taxation. Williams v. Jones, 326 So.2d 425 (Fla. 1975), appeal dismissed, 429 U.S. 803, 97 S.Ct. 34, 50 L.Ed.2d 63 (1976).