BENTON, J.,
dissenting.
The Property Appraiser and Tax Collector argue that improvements to county-owned real property are subject to local ad valorem taxes because, they claim, the real property improvements — in contrast to .the ground[3] on which they stand — are “owned by the [sub]lessee[s].” § 196.199(2)(b), Fla. Stat. (2004). We rejected exactly the same “novel proposition” in Bell v. Bryan, 505 So.2d 690, 691-92 (Fla. 1st DCA 1987), and should do so again, as a matter of stare decisis.
In the absence of intervening legislation, the county officials’ abrupt change in position raises the fundamental question whether local government must “be authorized by law to levy,” Art. VII, § 9(a), Fla. Const., or whether the Property Appraiser and Tax Collector may themselves simply decide to levy, ad valorem taxes on buildings, fixtures and other improvements to land that is itself concededly immune or exempt from local ad valorem taxation.
In my view, moreover, even if we were free to ignore a quarter century’s practice, the real property improvements, like the land, are the property of the sovereign, are subject to the same leases the land is, and are no more amenable to local ad valorem taxes than the land itself. Accordingly, I respectfully dissent.
I.
The leases involved encumber property that belonged to the federal government until January 15, 1947, when the United States of America conveyed land to Es-cambia County by a deed containing this proviso:
PROVIDED, that the above described land shall he retained by the said Es-cambia County and used by it for such purposes , as it shall deem to be in the public Interest or be leased by it .from . time to time in whole or in part or parts to. such persons and for such purposes as it shall deem to be in the public interest and upon such terms and conditions as it shall fix and always be subject to regulation by said county whether leased or not leased but never to be otherwise disposed of or conveyed by it.
(Emphasis supplied.) Subject to this deed restriction, Escambia County leased part of the property to Santa Rosa County. The learned trial judge made the following findings of fact:
1. On or about February 11, 1956, Santa-Rosa Island Authority, an agency of Escambia County, Florida, entered into an agreement to lease. the Navarre Beach section of Santa Rosa Island to Santa Rosa. County .(hereafter referred to as the “Prime Lease”) for a term of 99 years with a 99 year renewal option. 2. Paragraph 2 of the .Prime Lease provides in pertinent part:
.Lessee -[Santa Rosa County] or its said agency may grant leases with respect to all or any part of. the. demised prqperty for residential, recreational, and commercial purposes, provided the leases shall be substantially upon the same terms, considerations, *466 conditions as like leases then in use by the lessor [Santa Rosa Island Authority].
3. At the time the Prime Lease was executed, all leases in use by the Santa Rosa Island Authority provided that title to any improvements to the leased property would vest forthwith in Escam-bia County.
4. Plaintiffs are residential lessees, assignees, or sub-lessees from Santa Rosa County, Florida. The Plaintiffs Lewis and Betty Ward and Robert and Linda Coley have condominium units located on their leaseholds in Navarre Beach. Homer Weidlich has a condominium unit and a townhome located on his leaseholds in Navarre Beach. Matthew and Angela Gardner have a single family residence located on their leasehold in Navarre Beach. The Wards, Coleys, and Weidlich rent their units to third parties while the Gardner’s residence is owner occupied.
5. The term of the Plaintiffs leases is for a period of 99 years with an option to renew for 99 years. If the Plaintiffs observe and perform all conditions of the lease, they shall hold and enjoy the premises for the lease term.
6. The Plaintiffs lease agreements with Santa Rosa County require the payment of ground rent throughout the term of the lease.
7. The leases or sub-leases between Santa Rosa County and Plaintiffs contain a section regarding improvements that substantially contains the following language: (1) “Title to any building or other improvements of a permanent character that shall be placed upon the leased property by lessee shall vest in lessor, or its assigns, upon the termination of this lease, and lessee acknowledges that it shall not have the right to remove such fixed and permanent improvements from its leased property,” or (2) “Title to any buildings or other improvements of a permanent character that shall be erected or placed upon the leased property by the Lessee shall upon termination of this Lease vest in said Santa Rosa County subject, however, to each and every provision of this Lease. Lessee acknowledges that it shall have no right to remove such fixed permanent improvements from leased property.”
8. The Plaintiffs are permitted to convey, assign, transfer, or mortgage their leasehold estates without prior written approval of Lessor.
9. The Plaintiffs’ lease agreements also include the following provisions: the Plaintiffs as lessees or sub-lessees may use the premises as provided in the lease; the Plaintiffs must maintain the property in a clean, attractive and safe condition; the Plaintiffs must at their own cost and expense, repair and replace and maintain the leased property in a good, safe and substantial condition and shall use all economically reasonable precautions to prevent waste, damage or injury to the leased property; the Plaintiffs must provide for insurance; the Plaintiffs agree that the leased premises are subject to the terms, covenants, conditions, and restrictions of the Prime Lease; in the event of destruction of any building or improvements by fire, windstorm, water or other cause, Plaintiffs must repair or rebuild such building or improvement or be in breach of the lease agreement; all insurance proceeds from the destruction of the premises are payable to the Lessor and the Lessee jointly to assure repair or replacement of the improvements; and Plaintiffs must pay all taxes imposed upon the leased property.
*467 10. During and after the term of the lease, the lease agreements do not provide an opportunity for the Plaintiffs to acquire any interest in the improvements through an option to purchase or otherwise. In addition, the lease agreements do not contain a provision providing compensation to the Plaintiffs as a result of the early termination of the lease. Further, the Plaintiffs must surrender possession of the leasehold at the end of the lease term without compensation.
11. In tax year 2001, the property appraiser placed the improvements located on the Plaintiffs’ leasehold properties on the tax rolls and imposed real property ad valorem taxes on those improvements.
(Record citations omitted; brackets in original.) The ground rent is in addition to the full value of the improvements which, upon termination of the leases, become the unencumbered property of' the county.
II.
Our supreme court considered the tax implications of leases like these even before the statutes that now govern were on the books. See Williams v. Jones, 326 So.2d 425, 429 (Fla.1975) (“This is the third occasion in which the taxable status of leaseholds on Santa Rosa Island has been before this Court.”). Examining particularly article VII, section 2 of the Florida Constitution and section 196.199(6), Florida Statutes (1975), the supreme court said in the Williams case:
The questions presented by the instant appeal essentially are: Does the Legislature have the power constitutionally to treat leasehold interests in public land such as are here involved as real property for ad valorem tax purposes and, secondly, has the Legislature done so through the enactment of the [now superseded] statutory provisions here under attack? We answer both propositions in the affirmative.
326 So.2d at 429. In deciding that the statutes then in effect subjected to ad valo-rem taxation as real property the “leasehold interests in public land” created by Santa Rosa Island Authority leases, the Williams court construed this provision:
Property which is originally leased for 99 years or more, exclusive of renewal options, shall be deemed to be “owned” for purposes of this section.
§ 196.199(6), Fla. Stat. (1975). Until this language was enacted (ie., “[p]rior to the enactment of Chapter 71-133, Laws of Florida,” Williams, 326 So.2d at 437, which was originally codified as section 196.199(6), and is now codified as section 196.199(7)), the lessees’ interests had not been taxed. See generally State v. Escambia County, 52 So.2d 125, 130 (Fla.1951). Acknowledging the possibility that “a charge in lieu of taxes was taken into consideration in establishing the [amount of the] rent” while the original exemption remained in force, the Williams court opined “that if such is the case such lessees may very well be entitled, in a proper forum, to seek an equitable adjustment of their rental payments” under the leases. 326 So.2d at 436-37.
“In response to this problem, the Legislature passed Special Act 76-361 ... the primary effect of [which was] to require that rentals due the Santa Rosa Island Authority on leases dated on or before December 1, 1975, will be reduced each year by the amount of ad valorem taxes for county and school purposes paid on the leasehold interests for the preceding year.” Archer v. Marshall, 355 So.2d 781, 782-83 (Fla.1978). When the question of Special Act 76-361’s constitutionality reached our supreme court, however, the court “h[e]ld *468 that Chapter 76-361 ... violates Article VII, Section 3, Florida Constitution (1968), and is invalid.” Id. at 785. See also Am Fi Inv. Corp. v. Kinney, 360 So.2d 415, 415 (Fla.1978) (invalidating two “similar special act[s]” because they also were intended to “provide for an indirect exemption from ad valorem taxes not authorized by our state constitution and provide for refund to leaseholders of ad valorem taxes lawfully paid during 1972, 1973, and 1974”). In short, the Legislature was stymied in its efforts “to seek an equitable adjustment of [the lessees’ full] rental payments,” Williams, 326 So.2d at 436-37, by reducing or refunding the rental payments.
III.
Having failed — once the supreme court struck down the special acts reducing or refunding lease payments — to mitigate the perceived inequity of requiring full rental payments on top of ad valorem taxes, the Legislature changed tacks and exempted the lessees’ interests from real property ad valorem taxation altogether, restoring the status quo before chapter 71-133 became law. In order to accomplish this, chapter 80-368, § 2, at 1500, Laws of Florida, was enacted, amending section 196.199(7) to read:
Property which is originally leased for 100 years or more, exclusive of renewal options, or property financed, acquired, or maintained utilizing in whole or in part funds acquired through issuance of bonds pursuant to Chapter 159, parts II, III and V, shall be deemed to be “oivned” for purposes of this section.
(Emphasis supplied.) See also § 196.199(7), Fla. Stat. (2004). Although this was an indirect means to its end, the Legislature followed the path marked by the Williams decision, simply replacing 99 with 100. See Williams, 326 So.2d at 436 (“Leases for an initial term of less than 99 years are to be valued based on the economic value thereof taking into consideration, among other things, the duration of the unexpired term of the lease, while in the case of leases for an initial term of 99 years or more the lessee may be considered to be the owner ‘in fee simple’ and the property subject to the lease shall be valued for tax purposes as all other property owned in fee simple.”).
As for appellants’ leaseholds — all for an initial term of less than 100 years — the same enactment simultaneously removed any obstacle to taxation as intangible personalty. See Ch. 80-368, § 4, at 1501, Laws of Fla. (subjecting leaseholds in public lands to intangible tax where “rental payments are due in consideration of such leasehold estate or possessory interest”). See generally Miller v. Higgs, 468 So.2d 371, 377 (Fla. 1st DCA 1985) (rejecting a “smorgasbord of constitutional challenges [to chapter 80-368] asserted under Article VII”), disapproved in part by Capital City Country Club, Inc. v. Tucker, 613 So.2d 448, 450 (Fla.1993) (emphasizing that, in the Capital City Country Club case, “a municipality ... owns the property .rather than some other governmental entity”). Consistently since the failed challenge to the statutory change effected by chapter 80-368, the Santa Rosa Island Authority leases or subleases have been taxed as “chattels real,” a form of intangible personal property, while the county-owned land that is the subject of the leases has been treated as property of the sovereign, immune from taxation.
IV.
The same law that removed any obstacle to taxing the (sub)lessee’s leasehold as tangible personal property, where the lessor was a governmental entity like the Santa Rosa Island Authority, and made clear that land owned by county govern *469 ment was immune from taxation, also provided
that nothing herein shall be deemed to exempt personal property, buildings, or other real property improvements owned by the lessee from ad valorem taxation.
Ch. 80-368, § 2, at 1500, Laws of Fla., now codified as section 196.199(2)(b), Florida Statutes (2004). Based on this provision, the Property Appraiser has assessed and the Tax Collector proposes to collect taxes on real property improvements to land the Santa Rosa Island Authority has leased to the appellants.
Precisely the same approach in 1982 and 1983 led to litigation in Escambia County that reached this court. See Bell v. Bryan, 505 So.2d 690 (Fla. 1st DCA 1987). In deciding that case in favor of the lessees, we first summarized the situation:
With regard to the taxes to be paid by appellees in 1982 and 1983, the County assessed no tax on the value of the leasehold without improvements. This was apparently taxed by the state as intangible personal property pursuant to Section 196.199(2)(b), Florida Statutes (1981). However, taxes on the improvements made by the lessees/appellees were assessed at the full real property rate. AppellantyTax Collector issued tax certificates on the property to enforce the assessments. Appellees filed a complaint requesting declaratory and injunc-tive relief. The trial court granted summary judgment in favor of appellees finding that the real property belonged to the County, thus making tax certificates an improper method of enforcing an assessment, and finding that the assessments should have been at the intangible property rate instead of the real property rate. We affirm on both grounds.
Id., at 690-91. We explained our holding by reference to the governing statutes:
The general method of taxation is prescribed in other parts of Florida Statutes, e.g. Chapters 193 and 200. However, within Chapter 196, entitled “Exemptions,” appears Section 196.199(2)(b), Florida Statutes (1981)[FN3]:
FN3. The statute was slightly changed in 1985. Chapter 85-342, Laws of Florida.
(2) Property owned by the following governmental units, but used by nongovernmental lessees, shall only be exempt from taxation under the following conditions:
[[Image here]]
(b) ... Such leasehold estate shall be taxed only as intangible personal property pursuant to Chapter 199 if rental payments are due in consideration of such leasehold estate. If no rental payments are due pursuant to an agreement creating such leasehold estate, the leasehold shall be taxed as real property. Nothing in this section shall be deemed to exempt personal property, buildings, or other real property improvements owned by the lessee from ad valorem taxation.
The exemption contained in this section is applicable to the instant leaseholds. All parties concede that the exemption applies to the real property on which the improvements were built. However, appellants argue the novel proposition that the improvements, which are property of Escambia County, and the development of which is the express purpose of the creation of the leasehold, are not part of that leasehold. We can find no basis in law or reason for determining that the improvements on the real property are not as much a part of the leasehold as the real property itself.
*470 The trial court correctly determined that the assessments placed on the improvements to the subject property were erroneous and should have been determined at the intangible personal property rate pursuant to the above quoted section.
Id. at 691-92. In the present case, Santa Rosa County’s Property Appraiser and Tax Collector again argue the (now less) “novel proposition that the improvements, which are property of Escambia County, and the development of which is the express purpose of the creation of the leasehold, are not part of that leasehold.” Id. at 691.
V.
Since we do not sit en banc, we are bound by stare decisis to follow the decision in Bell v. Bryan. The majority opinion contends that Bell v. Bryan “is not controlling because the issue of equitable ownership was not addressed.” Ante p. 464 n. 2. But nothing else could have been addressed in Bell v. Bryan. Legal title has never been in question. The issue in Bell v. Bryan, like the issue here, was neither more nor less than whether the lessees' owned real property improvements for ad valorem tax purposes. Those lessees did not have deeds to the real property improvements, just as these lessees do not.
The majority opinion argues, in essence, that the duration of the leases is such that, as a practical matter, the lessee can be deemed the owner of the fee interest. But this argument overlooks the significance of chapter 80-368, § 2, at 1500, Laws of Florida. Revealingly, the argument also proves too much. It applies with equal force to the improvements and to the land itself, and must be rejected for that reason. The original deed restriction — and perhaps the Supremacy Clause — as well as Florida law over the last twenty-five years make unmistakably clear that the land, owned after all by the sovereign, is not to be taxed.
The other group of cases the majority opinion cites involves situations where lessees are deemed beneficial or equitable owners[4] of property to which government temporarily holds title as part of some financing arrangement. In these cases, once the financing is complete, the lease terminates and the property or its value devolves on the beneficial owner automatically or upon payment of a nominal sum. The leases in the present case afford no option to purchase, and no possibility for the lessee to obtain the value of the improvements he is bound to surrender to the lessor upon termination of the lease.
In sum, like the Bell v. Bryan court, I “can find no basis in law or reason for determining that the improvements on the real property are not as much a part of the leasehold as the real property itself.” Bell v. Bryan, 505 So.2d at 691-92.

. The parties do not dispute that the "leasehold or other interest” the taxpayers have in county-owned land "shall be taxed only as intangible personal property pursuant to chapter 199” because "rental payments are due in consideration of such' leasehold or other interest.” § 196.199(2)(b), Fla. Stat. (2004).

. In stark contrast, to reiterate, the trial judge found in the present case that the taxpayers acquired no interest in the improvements:
During and after the term of the lease, the lease agreements do not provide an opportunity for the Plaintiffs to acquire any interest in the improvements through an option to purchase or otherwise. In addition, the lease agreements do not contain a provision providing compensation to the Plaintiffs as a result of the early termination of the lease. Further, the Plaintiffs must surrender possession of the leasehold at the end of the lease term without compensation.