# Third District Court of Appeal

## State of Florida

Opinion filed May 27, 2015.
Not final until disposition of timely filed motion for rehearing.

————————————

Nos. 3D13-1599 & 3D13-1713
Lower Tribunal No. 09-60866

————————————

**Grove Key Marina, LLC and Scotty's Landing, LLC,**
Appellants/Appellees/Cross-Appellees,

vs.

**Fernando Casamayor, as tax collector for Miami-Dade County,**
Appellee/Cross-Appellant

vs.

**The City of Miami**
Appellant/Appellee/Cross-Appellee

Consolidated Appeals from the Circuit Court for Miami-Dade County, Peter A. Lopez, Judge.

Segall Gordich, P.A., and Norman S. Segall and Melissa Alagna, for Grove Key Marina, LLC and Scotty's Landing, LLC.

R. A. Cuevas, Jr., Miami-Dade County Attorney, and Jorge Martinez-Esteve and Alexander Bokor, Assistant County Attorneys, for Fernando Casamayor, as tax collector for Miami-Dade County.

Victoria Mendez, City Attorney, John A. Greco, Deputy City Attorney, and Warren Bittner, Deputy Emeritus, for the City of Miami.

Before SHEPHERD, C.J., and ROTHENBERG and SCALES, JJ.

ROTHENBERG, J.

The case before us is a consolidation of three separate appeals: (1) The City of Miami ("the City") appeals an order finding it liable for past-due ad valorem taxes owed on real property it owns but leases to Grove Key Marina, LLC ("Grove Key"), which Grove Key in turn subleases, in part, to Scotty's Landing, LLC ("Scotty's Landing") (collectively, the "Lessees"); (2) the Miami-Dade County Tax Collector, Fernando Casamayor ("the County"), cross-appeals that same order, contending that the trial court should have allowed it to pursue remedies against the Lessees for the unpaid taxes; and (3) the Lessees appeal an order denying their motions for attorney's fees following the trial court's order absolving them of payment for the past-due taxes. We affirm the trial court's decision.

## BACKGROUND

The City leased waterfront real property to Grove Key (a private, for-profit entity) via a lease agreement ("lease") signed on April 1, 1976. There is no "pass-through" provision in the lease expressly passing responsibility for the ad valorem property taxes from the City to Grove Key. The taxes provision in the lease agreement provides:

2

### 13.  TAXES

The City covenants and agrees that the leased premises are to be used and have been used for a governmental, municipal, or public purpose or function that could be served by the City, that the operation of the leased facility by the City would be a valid subject for the allocation of public funds, that the consideration paid by the Company [Grove Key] as described in this Lease Agreement is reasonable and adequate and in the best interests of the City and the public, and that the realty and leasehold interest of said leased premises are exempt from ad valorem taxes in accord with the provisions of Florida Statutes 196.199(2)(a) and Florida Statutes 196.012(5).

Scotty's Landing thereafter began operating a bar and restaurant in the Grove Key Marina pursuant to a management agreement between those parties.[1]  Grove Key and Scotty's Landing have the same principal officer.

Beginning in 1995, the County began sending property tax bills for the subject property to the City.  Every year the City forwarded these bills to Grove Key, and every year Grove Key returned them to the City unpaid, arguing that the City was responsible for the taxes.  The County never sent a property tax bill to either of the Lessees prior to the filing of the complaint by the Lessees in this case. The taxes for the period from 1995-2011 have never been paid and have not been

---

[1] The management agreement between Grove Key and Scotty's Landing contains a provision that requires Scotty's Landing to pay any taxes that may arise due to Scotty's Landing's operation on the premises:  "[Scotty's Landing] shall be responsible for all federal, state and local taxes pertaining to the operation of the snack shop, including ad valorem taxes on any personal or real property attributable to snack shop or snack shop area."  This agreement has no bearing on whether Grove Key or the City is liable for the unpaid property taxes, however, and is relevant only insofar as it could impute some tax liability to Scotty's Landing if Grove Key were found responsible for the unpaid taxes.

formally challenged by either the City or the Lessees. However, only the taxes from 2007 through 2011 are at issue in this case due to the statute of limitations.

On September 12, 2012, the County threatened to revoke the Lessees' occupational licenses and corporate charters unless they paid the outstanding property taxes. The Lessees responded by filing suit against the County requesting a declaratory judgment that the Lessees could not be held responsible for the assessed taxes. The County responded by counterclaiming against the Lessees and seeking a declaratory judgment that the Lessees did indeed owe the back taxes. The County also filed a third party complaint against the City alleging that the City could also be responsible for the unpaid assessments. The County's position was essentially that either the City or the Lessees owed the taxes, and it simply wanted **someone** to pay them. It appears the County was unaware of the precise terms of the lease agreement between the City and the Lessees prior to its counterclaim.

All three parties moved for summary judgment regarding the unpaid taxes, and the trial court entered an order finding that (1) the Lessees had no duty to pay the taxes based on the terms of the lease; and (2) the City is solely responsible for the ad valorem taxes assessed between 2007 and 2011. Based on this ruling in their favor, the Lessees subsequently sought attorney's fees incurred in defending the County's counterclaim against them pursuant to sections 192.0105(3)(g) and 57.105 of the Florida Statutes. The trial court then entered a second order finding

4

that the Lessees are not entitled to payment of their attorney's fees. The City appealed the portion of the trial court's order finding it responsible for the unpaid taxes, and the County appealed the portion of the order finding the Lessees were not liable for the unpaid taxes (Case No. 3D13-1599). The Lessees appealed the order denying their motion for attorney's fees (Case No. 3D13-1713). All these appeals were consolidated for our review.

## ANALYSIS

The consolidated appeals before us present three discrete issues for our review. First, is the City responsible for the unpaid ad valorem taxes on the property? Second, can the County separately pursue the Lessees to secure payment of the taxes even if the City owes the taxes? And finally, did the trial court abuse its discretion by denying the Lessees' motion for attorney's fees? We address these issues in turn.

### I. The City alone is responsible for the unpaid ad valorem taxes.

The facts of this case are undisputed, and our determinations regarding which party owes the unpaid property taxes and what remedial measures may be available to collect those unpaid taxes require us to interpret and apply several sections of the Florida Statutes. We accordingly review the trial court's ruling on those issues de novo. Borden v. East-European Ins. Co., 921 So. 2d 587, 591 (Fla. 2006).

5

***A.*** ***The City owes the unpaid taxes because the property is not being exclusively utilized for public purposes.***

The Florida Constitution provides: "By general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation." Art. VII, § 4, Fla. Const. There are certain exceptions and nuances to this general rule, however, when the property at issue is governmentally owned. For example, governmentally owned property that is used exclusively for public purposes is completely exempt from property taxation. Art. VII, § 3, Fla. Const.; § 196.199(1), Fla. Stat. (2009). Conversely, when a city owns property that is then leased to a private entity for a non-governmental purpose, the tax exemption is lost. § 196.199(2), Fla. Stat. (2009); Capital City Country Club, Inc. v. Tucker, 613 So. 2d 448, 451-52 (Fla. 1993) ("[W]e conclude that the legislature could not constitutionally exempt from real estate taxation municipally owned property under lease which is not being used for municipal or public purposes."). It is axiomatic that, absent an express exemption, all real property owned by a municipality and situated within the limits of that municipality is subject to ad valorem taxation by the county in which the municipality is located.

It is undisputed in this case that the property at issue is not being used for a public or governmental purpose; it is clearly proprietary. As such, it is similarly clear that the property is not exempt from taxation, and the City is responsible to

6

the County for the ad valorem taxes owed on the property. The only question remaining on this issue is whether the City can pass its liability to the Lessees.

The Florida Supreme Court, interpreting the relevant statutory provisions, has established that a municipality is responsible for the ad valorem taxes on property leased to a private entity, while the private lessee is responsible for taxes on the intangible leasehold interest in the property. Tucker, 613 So. 2d at 452. However, a so-called "pass-through" provision in the lease expressly shifting the municipality's ad valorem tax obligations to the lessee contractually renders the private lessee responsible to the city for the city's tax burden. Id.

In Tucker, the City of Tallahassee owned real property that it subsequently leased to a private country club for only $1 per year. Id. at 450. The lease included a provision that required the club to pay all ad valorem taxes assessed against the property. Id. The country club brought suit to challenge a property tax assessed against it by arguing that it was being double-taxed for the same property—once for the real property itself (the ad valorem taxes assessed by the county) and once for the leasehold interest in the property (the intangible property tax assessed by the state). Id. In rejecting the club's argument, the Florida Supreme Court held:

> We reject the club's contention that the imposition of real estate taxes on the fair market value of the land and the imposition of intangible taxes on the leasehold interest constitutes double taxation of the property. Intangible personal property is property which is not

7

itself intrinsically valuable, but which derives its chief value from that which it represents. §§ 199.023(1), 192.001(11)(b), Fla.Stat. (1991). The intangible tax is being imposed on the rights afforded to the club under the lease. The real estate taxes, on the other hand, are being imposed on the land itself. In Florida, real estate taxes are collected by the county, while the intangible tax on leasehold interests is collected by the state. In this case, the club, as the holder of a leasehold interest, is legally responsible for the intangible tax. **The club's responsibility for the real estate taxes, however, is contractual. It stems from the pass-through provision in the lease wherein the club agreed to pay the real estate taxes assessed against the land. Absent this provision, the city, as owner of the property, would be responsible for the real estate tax because the land is not being used for a municipal or public purpose.**

Id. at 452 (emphasis added). Under Tucker, a municipality is liable for any property tax assessed, but if there is an express pass-through provision in the lease, the lessee can be required to reimburse the municipality for the ad valorem taxes it pays on the land. Intangible leasehold taxes, however, are the responsibility of the lessee.[2]

---

[2] The City also argues that Florida Administrative Code 12D-13.046, which was promulgated by the Florida Department of Revenue, see section 195.027, Fla. Stat. (2009), requires the Lessees to pay any taxes owed on the property. Section 12D-13.046 of the code provides in full:

**Taxation of Governmental Property Under Lease to Non-Governmental Lessee.**

When property is owned by a governmental unit and is leased to a non-governmental lessee and has not been exempted from taxation, the tax should be assessed to the non-governmental lessee. If no rental payments are due pursuant to the agreement creating the leasehold estate, or if the property meets the requirements of Section 196.199(7), F.S., the leasehold estate shall be taxed as real property. Ad valorem real property taxes relating to government property, levied on a leasehold that is taxed as real property under Section 196.199(2)(b), F.S., must be paid by the lessee. If such taxes are not

8

Here, unlike the lease at issue in <u>Tucker</u>, there is no pass-through provision in the agreement between the City and the Lessees requiring the Lessees to assume the ad valorem taxes on the property. To the contrary, if anything, the lease purports to exempt the Lessees from paying any property taxes at all.[3] Because the property is not exempt from ad valorem taxes based on public use, we find that the City must pay the property taxes for which it is responsible. And because there is no pass-through provision in the lease, the City cannot ultimately shift its liability onto the Lessees.

## B. The County cannot pursue remedies against the Lessees for unpaid taxes never assessed against them

paid, the delinquent taxes become a lien on the leasehold and may be collected and enforced under the provisions of Sections 197.412 and 197.413, F.S. The tax collector shall notify the Department of delinquencies and action taken to collect the delinquent tax. If rental payments are due, the leasehold estate shall be taxed as intangible personal property in accordance with Chapter 199, F.S., and delinquencies shall be processed as in the case of other intangible personal property.

The City focuses only on the first sentence of 12D-13.046, ignoring the balance of the provision. Section 12D-13.046 clarifies that the lessee must pay any taxes resulting from its leasehold interest in the property, which is taxed as intangible property if rental payments are due, as is the case here, and is taxed as real property if no rental payments are due. <u>See</u> § 196.199(2)(b). It is undisputed in this case that the Lessees have been paying the intangible property tax owed on their leasehold interests, so they are in compliance with section 12D-13.046 of the administrative code. The City has simply misinterpreted the provision.

[3] The City does not have the authority to contractually prevent the County or State from collecting taxes, nor can it determine whether or not a property is being utilized for "public use." We call attention to this provision merely to show that the parties' intentions was very clearly not to have the Lessees assume liability for the ad valorem taxes on the property.

Having determined that the City owes the ad valorem taxes on the property, we now address the County's argument that sections 197.432(10) and 196.199(8) of the Florida Statutes authorize it to seek remedial action against the Lessees irrespective of which party owes the unpaid taxes. The County contends that even though there is no pass-through provision in the lease contractually obligating the Lessees to pay the ad valorem taxes on the property—and the City is therefore indisputably responsible for the property taxes, as explained above—the County should still be able to simultaneously pursue an action against both the Lessees and the City to persuade one of the two to pay the back taxes, leaving the paying party to pursue its remedies against the non-paying party. This position is untenable. While the County may have had some direct recourse against the Lessees if there was a pass-through provision in the lease making them liable for the City's portion of the taxes, it cannot extort the Lessees into paying property taxes they clearly do not owe by threatening to revoke the Lessees' business licenses and charters.

Section 197.432 provides the procedure for the issuance and sale of tax certificates to satisfy unpaid property tax assessments. See generally § 197.432. Subsection (10) of section 197.432, however, exempts governmentally owned property from the typical tax certificate procedure, and instead provides that delinquent taxes owed on such property shall be enforced only as provided in section 196.199(8). Section 197.432(10) provides, in full:

10

A certificate may not be sold on, and a lien is not created in, property owned by any governmental unit which has become subject to taxation due to lease of the property to a nongovernmental lessee. **The delinquent taxes shall be enforced and collected in the manner provided in s. 196.199(8).** However, the ad valorem real property taxes levied on a leasehold that is taxed as real property under s. 196.199(2)(b), and for which no rental payments are due under the agreement that created the leasehold or for which payments required under the original leasehold agreement have been waived or prohibited by law before January 1, 1993, must be paid by the lessee. If the taxes are unpaid, the delinquent taxes become a lien on the leasehold and may be collected and enforced under this chapter.

(emphasis added). Section 196.199(8) then provides, in full:

(8)(a) Any and all of the aforesaid **taxes on any leasehold described in this section** shall not become a lien on same or the property itself but shall constitute a debt due and shall be recoverable by legal action or by the issuance of tax executions that shall become liens upon any other property in any county of this state **of the taxpayer who owes said tax**. The sheriff of the county shall execute the tax execution in the same manner as other executions are executed under chapters 30 and 56.

(b) Nonpayment of **any such taxes by the lessee** shall result in the revocation of any occupational license of such person or the revocation, upon certification hereunder by the property appraiser to the Department of State, of the corporate charter of any such domestic corporation or the revocation, upon certification hereunder by the property appraiser to the Department of State, of the authority of any foreign corporation to do business in this state, as appropriate, which such license, charter, or authority is related to the leased property.

(emphasis added).

The County emphasizes section 196.199(8)(b) and argues that the statute allows it to pursue remedial action against the Lessees for any taxes owed on property that has lost its governmental exemption by way of a proprietary lease to

11

a private entity. The County makes the novel, although not altogether unreasonable, argument that the Florida Legislature intended 196.199(8) to be a broad remedial measure for precisely this situation, such that the County should be able to collect from either the City or the Lessees when they are both refusing to pay the property tax by pointing the finger towards one another. According to the County's argument, the County could take the remedial actions against the Lessees outlined in subsection (b) regardless of which party owed the taxes in order to compel the Lessees to pay the tax, and then the Lessees could pursue an action for contribution against the City if the City was actually the party responsible for the payment of those taxes. The reasoning for this argument can be analogized to joint and several liability with the right to contribution, whereby a party can occasionally be forced to pay more than his share of a judgment, but can then recover in a separate action against his co-tortfeasors for the amount by which he overpaid. See § 768.31(2), Fla. Stat. (2013).

The County's argument on this point, however, is founded on a misreading of the statute. Section 196.199(8)(a) specifies that the subsection only applies to taxes owed "on any leasehold" and allows liens to be imposed on other property in the State "of the taxpayer who owes said tax." Section 196.199(8)(b) further clarifies that "nonpayment of any such taxes by the lessee" shall result in the remedies enumerated therein. Read holistically, subsections 196.199(8)(a) and (b)

simply prevent the County from imposing a lien on governmentally owned property so as not to interfere with the property rights of another governmental entity, but they allow a direct legal action to recover against the City if the City owes the taxes and provide several additional alternative remedies if the Lessees owe the taxes.

The statute cannot be read, however, to allow remedial action against a lessee who does not in any way owe taxes on the property, such as the Lessees in this case. We therefore find that the County cannot pursue any remedial action against the Lessees for the delinquent ad valorem taxes owed solely by the City, and accordingly affirm the trial court's order on that point.

II. **The trial court did not abuse its discretion by denying the Lessees' motions for attorney's fees.**

The Lessees' only contention of error on appeal is the trial court's denial of their motion for attorney's fees, which motion is based on the argument that the County and the City have asserted frivolous claims against them by trying to force them to pay ad valorem property taxes they clearly do not owe. While the Lessees have prevailed on their claim, this is a complicated area of the law, and we cannot find that the trial court abused its discretion in denying the Lessees' motion on these facts.

In support of its motion for attorney's fees, the Lessees cite sections 57.105 and 192.0105(3)(g) of the Florida Statutes. Section 57.105(1) provides:

13

(1) Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee . . . to be paid to the prevailing party . . . on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:

(a) Was not supported by the material facts necessary to establish the claim or defense; or

(b) Would not be supported by the application of then-existing law to those material facts.

Similarly, section 192.0105(3)(g), one of the enumerated "Taxpayer Rights," provides that:

(g) The right of the taxpayer, property appraiser, tax collector, or the department, as the prevailing party in a judicial or administrative action **brought or maintained without the support of justiciable issues of fact or law**, to recover all costs of the administrative or judicial action, including reasonable attorney's fees, and of the department and the taxpayer to settle such claims through negotiations (**see ss. 57.105 and 57.111**).

(emphasis added). These statutory provisions essentially turn on the same question: Did the losing party assert a frivolous action or claim it knew to be unsupported by the facts or law?

The Florida Supreme Court has set a high bar for the recovery of attorney's fees under section 57.105 by holding that "[s]ection 57.105 fees will not be awarded unless the court finds 'a total or absolute lack of a justiciable issue, which is tantamount to a finding that the action is frivolous . . . and so clearly devoid of merit both on the facts and the law as to be completely untenable.'" Muckenfuss

14

v. Deltona Corp., 508 So. 2d 340, 341 (Fla. 1987) (quoting Whitten v. Progressive Cas. Ins. Co., 410 So. 2d 501, 505 (Fla. 1982)). In addition to the high threshold required for the imposition of attorney's fees sanctions, we also presume the trial court's finding regarding the award of attorney's fees to be correct unless it is completely unreasonable. See DiStefano Const., Inc. v. Fid. & Deposit Co. of Maryland, 597 So. 2d 248, 250 (Fla. 1992) ("[T]he award of attorney's fees is a matter committed to sound judicial discretion which will not be disturbed on appeal, absent a showing of clear abuse of discretion."). The coalescence of these two lofty standards is simply too much for the Lessees to overcome based on these facts.

The taxation of governmentally owned property is a complicated matter, as evidenced by our analysis above. When the Lessees sought a declaratory judgment that they could not be held liable for the unpaid taxes, the County simply covered its bases by counterclaiming for the payment of those taxes and then interpleading the City. While it may now seem clear that the City owes the unpaid taxes, the details of the lease agreement between the City and the Lessees were not known to the County at the time, and the County was not unreasonable in seeking to secure payment of the unpaid taxes. Furthermore, the County's position that it could take remedial action against the Lessees even after it became clear that the City owed the taxes, while novel, is not completely unreasonable. The maze of statutory

15

sections leading to the correct result could easily be misinterpreted to allow such action, and we believe that the County's arguments on that point are not completely frivolous.  We therefore affirm the trial court's order on this issue as well.

Affirmed.